**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| HALL CA-NV, LLC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.  3:18-cv-380 |
| | § | |
| OLD REPUBLIC NATIONAL TITLE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

Plaintiff Hall CA-NV, LLC ("Hall" or "Plaintiff") files its Original Complaint against

Defendant Old Republic National Title Insurance Company ("Old Republic") as follows:

**I.  PARTIES**

1.      Hall CA-NV, LLC is a Texas limited liability company.  None of the members of

Hall CA-NV, LLC is a citizen of Minnesota or Florida.

2.      Old Republic National Title Insurance Company is a Florida corporation with its

principal place of business in Minneapolis, Minnesota.  Old Republic is engaged in the business

of insurance in the state of Texas and can be served through its attorney for service, Shannon

Skurner, 777 Post Oak Blvd., Suite 240, Houston, Texas 77056-3259.

**II.  JURISDICTION & VENUE**

3.      The foregoing paragraphs are incorporated herein by reference.

4.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §

1332(a)(1) because Old Republic is not a citizen of any state of which Plaintiff is also a citizen,

and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.      Old Republic is a title insurer doing business in the Northern District of Texas, where Old Republic maintains offices and employees and regularly issues policies of title insurance to other Texas insureds, like Hall.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Old Republic resides in and is subject to personal jurisdiction in this district.

### III.  FACTUAL BACKGROUND

**A.      Old Republic Promised To Indemnify Hall For Loss And To Defend Hall Against Third-Party Claims Under Lender Title Policies Issued To Hall.**

7.      This lawsuit arises out of Old Republic's obligations under lender title policies issued to Hall in connection with property commonly known as the Cal Neva Lodge & Casino, located at 2 State Line Road, Incline Village, Nevada and 9939 White Cap Lane, Kings Beach, California (collectively the "Property")—a resort destination straddling the California-Nevada border overlooking Lake Tahoe.  The Property gained notoriety in the 1960s through its then-part-owner, Frank Sinatra.

8.      By 2013, ownership of the property had passed to New Cal-Neva Lodge, LLC ("New Cal-Neva").

9.      Hall entered into a Construction Loan Agreement, authorizing up to $29 million in debt financing to New Cal-Neva, on September 30, 2014 (the "Senior Loan").

10.     Prior to making any loan to New Cal-Neva, Hall performed diligence and obtained assurances from both New Cal-Neva and its general contractor, The Penta Building Group, LLC ("Penta"), that any loan made by Hall would be secured by a first priority lien.

11.     Hall secured the Senior Loan with two documents entitled "Construction Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents and Leases" (the

"Construction Deeds of Trust"), which were recorded, respectively, in Washoe County, Nevada and Placer County, California on October 2, 2014.

12.     Old Republic issued two policies of title insurance to Hall in connection with the Senior Loan made by Hall to New Cal-Neva.

13.     Old Republic issued Title Insurance Policy No. LX09695707 (the "Nevada Policy"), dated October 2, 2014, which insures Hall with respect to the Construction Deed of Trust filed in Nevada.

14.     Old Republic also issued Title Insurance Policy No. A04285-LX-131878 (the "California Policy") (together with the Nevada Policy, the "Policies"), dated October 2, 2014, which insures Hall with respect to the Construction Deed of Trust filed in California.

15.     Old Republic's function as a title insurer was and is to protect its insured against the existence of liens and other items not found in a title search or otherwise disclosed in diligence leading up to the insured transaction.

16.     As part of its title investigation and prior to issuing the Policies, Old Republic visited the Property and communicated with many people, including the Property's caretakers and New Cal-Neva.

17.     During this investigation, Old Republic learned of "preconstruction services" and/or renovations performed at the Property between July 2013 and January 2014.  Indeed, New Cal-Neva sought Old Republic's consent with respect to construction done on the Property prior to the filing of Hall's Construction Deeds of Trust "because we [New Cal-Neva] wanted [Hall's] underwriters to have a good process with Hall in underwriting their title—their lender title policy."

18.     With full knowledge of the preconstruction services and/or renovations at the Property and without any mention of lien priority issues by any party, Old Republic proceeded to issue the Policies to Hall.  At no time prior to issuing the Policies did Old Republic require New Cal-Neva to file a Notice of Completion or to wait until the subsequent statutory period for the filing of mechanics liens had expired.

19.     The Policies issued by Old Republic insure Hall as of October 2, 2014 against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by reason of various enumerated "Covered Risks," including the following, in relevant part:

> (2) Any defect in or lien or encumbrance on the Title.  This Covered Risk includes but is not limited to insurance against loss from (a) A defect in the Title caused by (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation . . . . ;
>
> (9) The invalidity or enforceability of the lien of the Insured Mortgage upon the Title.  This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation . . . . ;
>
> (10) The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance; and
>
> By endorsement, the Policies also insure Hall after October 2, 2014 for "[t]he invalidity or unenforceability of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage [January 14, 2016 with respect to the Nevada Policy and January 15, 2016 with respect to the California Policy]."

20.     The "Amount of Insurance" provided by the Policies is $29 million.

21.     For purposes of the "Covered Risks" insured by the Policies, the Insured Mortgage refers to the Construction Deeds of Trust.

22.     In addition to promising to indemnify Hall against actual monetary loss or damage sustained, Old Republic agreed under the Policies that "[u]pon written request by the Insured . . . [Old Republic], at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured."

**B.      Penta Filed A Mechanic's Lien Asserting Priority Over Hall's Insured Mortgage Based On Work Performed At The Property Prior To Old Republic's Issuance Of The Policies.**

23.     On or about February 16, 2016, Penta recorded a Notice of Lien (the "Penta Lien") in Washoe County, Nevada asserting a balance of $7,911,902.80 owed to Penta in connection with "preconstruction services" and renovation work performed at the Property.

24.     Then, on April 14, 2016, Penta filed a Mechanic's Lien Foreclosure Verified Complaint in the Second Judicial District Court, Washoe County, Nevada initiating Case No. CV16-00837 (the "Nevada State Court Case") to foreclose on its mechanic's lien.

25.     In the Nevada State Court Case, Penta alleged, among other things, that its renovation work on the Property began before Hall's Construction Deeds of Trust were filed on October 2, 2014, and (contrary to its prior representations to Hall) the Penta Lien had priority over all other liens, mortgages, or other encumbrances, including any claim asserted by Hall in connection with the Construction Deeds of Trust.

26.     On May 19, 2016, Penta also filed a Verified Complaint for Damages and To Foreclose Mechanic's Lien in the Superior Court of California, County of Placer, initiating Case

No. S-CV-0037787 (the "California State Court Case"), asserting similar claims related to the foreclosure and priority of the Penta Lien asserted in the Nevada State Court Case.

27.     On July 28, 2016, New Cal-Neva filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Case").

28.     The California and Nevada State Court Cases were eventually removed and/or transferred to the United States Bankruptcy Court for the District of Nevada styled *In Re New Cal Neva Lodge, LLC*, Case Adv. Nos. 16-5036 GWZ, 17-5003 GWZ, and 17-5007 GWZ (the "Adversary Proceedings").

**C.     Old Republic Agreed To Defend Hall In The Adversary Proceedings But Ultimately Wrongfully Denied Its Duty To Indemnify Hall In Connection With The Claim.**

29.     Hall submitted a claim to Old Republic under the Policies in May of 2016 (the "Claim").

30.     Months later, on or about January 13, 2017, Old Republic agreed to retain counsel to defend Hall in the Adversary Proceedings pursuant to a reservation of rights, stating in part, "Our coverage issues are broadly related to our lack of information about the timing of the work that is the basis for the recorded liens."

31.     Old Republic's statement contains material misrepresentations and omissions of fact as Old Republic knew that the preconstruction services and renovation work forming the basis for the Penta Lien was, in fact, performed before the Policies were even issued.

32.     Thereafter, Old Republic selected and appointed the law firm of Kolesar & Leatham ("Appointed Counsel") to represent Hall in the Adversary Proceedings.

33.     Later in August 2017, Old Republic denied any duty to indemnify Hall in connection with the Adversary Proceedings.

34.     Old Republic has asserted that "the Claim could only have coverage under Endorsement 32-06," which insures against liens arising after the Date of the Policies.

35.     Because Penta's allegations and the supporting facts revealed that the Penta Lien at issue attached as a result of the preconstruction services and/or renovations performed in 2013 and early 2014, of which Old Republic was aware, Insuring Provisions 2, 9 and 10—evidencing Covered Risks as of the Date of the Policies—provide coverage for the Claim.

36.     Old Republic's August 23, 2017 coverage position also asserts without adequate investigation or factual support that Penta's "Mechanic's Liens relate to services performed between October and December 2015," when in fact, as known to Old Republic from its investigation prior to the underwriting of the Policies, Penta's Lien is based on work performed as early as 2013.

37.     Old Republic also raised Exclusion 3(a) in the Policies as a purported basis for denying coverage.   Exclusion 3(a) excludes from coverage "defects, liens, encumbrances, adverse claims and other matters created, suffered, assumed, or agreed to by the Insured Claimant."

38.     Old Republic's reliance upon this exclusion is without justification or reason given that Penta's Lien attached upon the provision of preconstruction services and/or renovations done prior to Hall's underwriting of the Senior Loan.

39.     Hall, by and through its counsel, responded to Old Republic's coverage position by letter dated September 20, 2017.  In its September 20, 2017 letter, Hall urged Old Republic to reconsider its coverage determination, citing supplemental legal and factual support regarding the meaning or purpose of the exclusions upon which Old Republic relied for its denial of the Claim.

40.     Hall again responded to Old Republic's coverage position in correspondence, dated November 2, 2017, by addressing the attachment of Penta's Lien, at the time preconstruction services and/or renovation work began in 2013, relative to the underwriting of Hall's Senior Loan in September 2014.

41.     Despite these efforts to correct Old Republic's incorrect legal assumptions and false factual representations, Old Republic has maintained its denial of coverage for the Claim without substantively responding to Hall's correspondence.

42.     Old Republic's continuing denial and its persistent refusal to indemnify Hall for the Claim based on incorrect assumptions and misrepresentations regarding the applicable facts and law, made without performing an adequate investigation, demonstrates that its conduct is knowing and willful.

**D.     When Conflicts Arose, Old Republic Refused To Acknowledge Hall's Right To Independent Counsel.**

43.     As the Adversary Proceedings progressed, it became apparent that an actual conflict existed between Old Republic and Hall in that the facts being adjudicated in the Adversary Proceedings were the very same facts upon which coverage of the Claim turned.

44.     These facts included, as Old Republic acknowledged, the timing of the work made the basis for the Penta Lien.  Additionally, Penta sought discovery, including deposition testimony from Old Republic itself, in the Adversary Proceedings related to Old Republic's knowledge of work done prior to the Construction Deeds of Trust.

45.     As a result, Appointed Counsel had an actual conflict of interest in that the facts that would be adjudicated in the Adversary Proceeding, through the discovery and trial work in which Appointed Counsel was actively engaged, were the same facts upon which Old Republic's coverage defenses would depend.

46.     This conflict created the right for Hall to obtain independent counsel—not counsel controlled or directed by Old Republic.

47.     On or about September 20, 2017, Hall requested Old Republic to confirm its right to a defense in the Adversary Proceedings by independent counsel, chosen by Hall and paid for by Old Republic.

48.     By letter dated September 29, 2017, Old Republic refused to honor its obligation to pay for independent counsel and stated, "[Hall] can retain its own counsel and [sic] its own expense to alleviate the conflict."

49.     Old Republic also refused to provide Hall with independent counsel once a conflict arose between Hall and another one of Old Republic's insureds, Ladera Development, LLC ("Ladera").

50.     Ladera was a junior lender in connection with Penta's renovation of the Property. Ladera loaned New Cal-Neva a second tier loan for $6 million (the "Junior Loan"), secured by second lien deeds of trust filed in Nevada and California.

51.     In order to induce the senior financing from Hall, Hall and Ladera entered into an Intercreditor and Subordination Agreement, dated September 30, 2014, under which Ladera agreed to fully subordinate the Junior Loan, and any related liens or security interest, to the Senior Loan issued by Hall, and any related liens and security interests.

52.     Similar to Penta's assertion of priority against Hall, among the claims consolidated in bankruptcy court in Nevada and constituting the Adversary Proceedings was Penta's complaint against Ladera, which asserted priority over Ladera's deeds of trust relating to the Junior Loan and associated claims for declaratory relief.

53.     Initially, Hall and Ladera's interest in defeating Penta's assertion of priority in the Adversary Proceedings seemed to align.

54.     In the Bankruptcy Case, however, Hall and Ladera's interests were not aligned. Indeed, Ladera proposed a plan in the Bankruptcy Case that would have resulted in payment to Ladera on the Junior Loan before Hall was paid in full on the Senior Loan.  Hall sought relief from the court, which entered a temporary restraining order in Hall's favor on August 16, 2017 in Case No. 17-01526 in the Second Judicial District of Nevada, County of Washoe.

55.     The conflict between Hall and Ladera in the Bankruptcy Case grew and soon impacted the Adversary Proceedings, because the offered purchase price for the Property under the Committee's Plan in the Bankruptcy Case was insufficient to cover Penta's claim and Hall and Ladera's security interests.

56.     This placed Hall and Ladera at odds over the recovery of finite proceeds, for despite the Intercreditor Agreement and Subordination Agreement, Ladera demanded to be paid from the finite proceeds.  This conflict between Hall and Ladera prevented Appointed Counsel from actively working and negotiating a global settlement, leaving the job of resolving the Adversary Proceedings to Hall's counsel in the Bankruptcy Case, counsel which was paid for by Hall.

57.     Upon recognition of the conflict it had with Ladera in the Adversary Proceedings, Hall requested Old Republic to provide it with counsel separate and apart from Ladera.

58.     Unwilling to incur the additional expense that would stem from providing separate defense counsel to its insureds, Old Republic refused Hall's request, calling the actual conflict "purely hypothetical".

59.     The substantive conflicts of interest between Hall and Old Republic over its "coverage defenses" and the ethical conflicts of interest precluding one lawyer from representing both Hall and Ladera justified the retention of independent counsel for Hall in the Adversary Proceedings, which Old Republic wrongfully refused to provide.

60.     As a result of Old Republic's intransigence, Hall was compelled to incur substantial additional expense, through the work performed by its counsel in the Bankruptcy Case—work, which Appointed Counsel could not ethically perform due to a material conflict of interest between Hall and Ladera.

**E.      Old Republic Refused To Attempt In Good Faith To Promptly And Fairly Settle Penta's Claim Against Hall.**

61.     Given the factual and legal arguments supporting Penta's Lien, Hall was compelled to pursue settlement of the Adversary Proceedings in order to mitigate its loss.

62.     At different times in November 2017, Hall urged Old Republic both to respond to demands from Penta for settlement and affirmatively to approve settlement authority necessary to resolve the Adversary Proceedings through a global settlement in the Bankruptcy Case.  Each time, Old Republic refused.

63.     Moreover, Old Republic expressly made its willingness to make any substantial contribution toward settlement dependent on resolution of not only Hall's title claims against it, but Ladera's title claims as well.  When Ladera refused to enter into a global settlement releasing Old Republic, Old Republic refused to make any meaningful contribution toward resolution of Penta's claims against Hall.  Simply put, Old Republic favored Ladera's interests over Hall's.

64.     Old Republic's refusal to acknowledge its obligations to indemnify Hall in connection with the Adversary Proceedings and its failure to attempt in good faith to effect a fair

and equitable settlement of Penta's Lien claims delayed resolution of the Adversary Proceedings, leading to increased costs for Hall and, ultimately, less favorable settlement terms.

**F.     Hall Mitigated Its Loss By Settling The Adversary Proceedings Without Any Contribution From Old Republic.**

65.     Ultimately, on or about December 6, 2017, Hall reached an agreement in principle with Penta and other third-parties to settle the Adversary Proceedings on terms calling for the sale of the Property and division of proceeds between Hall, Penta and other parties.

66.     Pursuant to the terms of the Settlement, the Property was sold on January 10, 2018 for $38 million.

67.     Of this amount, Penta received $7,937,000 in settlement of the Penta Lien claims.

68.     As of January 10, 2018, Hall was owed $33,367,409, consisting of (1) the principal amount of the Senior Loan to New Cal-Neva; (2) accrued interest, exit and prepayment fees; and (3) out-of-pocket costs incurred as of the same date.  The $38 million sale price did not adequately satisfy the amounts owed to Hall in connection with the Senior Loan and the Construction Deeds of Trust.  In fact, Hall only received $27,407,955 of the aggregate sale proceeds.

69.     As a result of Penta's Lien and Old Republic's failure to indemnify Hall under the Policies, Hall has suffered a loss in an amount not less than $5,959,454.

## IV.  CAUSES OF ACTION

**A.     Breach of Contract**

70.     The foregoing allegations are incorporated herein by reference.

71.     The Policies are valid, enforceable contracts.

72.     Hall is an insured under the Policies and has standing to assert claims under the Policies.

73.     Hall has satisfied all conditions under the Policies.

74.     The terms of the Policies unambiguously provide coverage for the Claim.

75.     Alternatively, the terms of the Policies, including the exclusions relied upon by Old Republic to deny coverage, are vague and ambiguous and must be construed in favor of coverage for Hall's Claim

76.     Old Republic has breached the Policies by denying coverage for the Claim.

77.     Old Republic's breach has caused Hall substantial damages.

**B.      Chapter 542 of the Texas Insurance Code**

78.     The foregoing allegations are incorporated herein by reference.

79.     Hall has made a claim under the Policies for the Adversary Proceedings and resulting loss in the amount of $5,959,454 and has satisfied all conditions under the Policies.

80.     Old Republic has engaged in conduct that constitutes violations of Chapter 542 of the Texas Insurance Code by delaying and/or failing to timely pay Hall's loss in connection with the Claim.

81.     Consequently, Hall is entitled to the damages set forth in § 542.060 of the Texas Insurance Code, including, in addition to the amount of Hall's loss, interest at the rate of eighteen percent (18%) per annum as well as any and all other relief provided therein.

**C.      Chapter 541 of the Texas Insurance Code**

82.     The foregoing allegations are incorporated herein by reference.

83.     Pursuant to § 541.154 of the Texas Insurance Code, Hall provided notice of its intent to pursue a claim against Old Republic under § 541.151 of the Texas Insurance Code by letter dated November 2, 2017.

84.     Old Republic has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

85.     Old Republic has violated Section 541.060(2) of the Texas Insurance Code by failing in good faith to accept reasonable proposals to resolve the Adversary Proceedings on behalf of Hall when Old Republic's liability was reasonably clear.

86.     Old Republic has violated Section 541.060(3) of the Texas Insurance Code by denying coverage for the Claim without providing any factual or legal basis for such an assertion, including Old Republic's failure to account for the timing of when the Penta Lien attached or was created, or to explain its denial in light of facts or applicable law.

87.     Old Republic has violated Section 541.060(7) of the Texas Insurance Code by refusing coverage for the Claim without conducting a reasonable investigation with respect to the Claim.

88.     As a result of Old Republic's conduct, Hall has suffered millions of dollars in damages and incurred substantial attorneys' fees.

89.     Old Republic knowingly committed one or more of the violations referenced above and thus Hall seeks, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

**D.      Breach of the Duty of Good Faith and Fair Dealing**

90.     The foregoing allegations are incorporated herein by reference.

91.     Old Republic owes to Hall a duty of good faith and fair dealing in connection with handling Hall's Claim under the Policies.

92.     Old Republic has violated its duty of good faith and fair dealing by refusing to indemnify Hall for its loss without a reasonable basis.  Old Republic's liability for Hall's loss at

issue is reasonably clear.  Hall has suffered, and will continue to suffer, actual damages as a result of Old Republic's breaches of the duty of good faith and fair dealing.

93.     Old Republic's acts or omissions in this regard were malicious, fraudulent, and/or grossly negligent, justifying imposition of punitive and exemplary damages.

**E.     Attorneys' Fees**

94.     The foregoing allegations are incorporated herein by reference.

95.     Due to the actions of Old Republic, Hall has been required to retain the services of the law firm of Haynes and Boone, LLP.

96.     Hall has agreed to pay Haynes and Boone a reasonable fee for its services necessarily rendered and to be rendered in this action.

97.     Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code and/or Sections 541.152, 542.060 of the Texas Insurance Code, Hall is entitled to an award of its reasonable attorneys' fees against Old Republic in an amount to be established at trial.

## VI. JURY DEMAND

98.     Hall hereby requests a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII. PRAYER

WHEREFORE, Plaintiff Hall CA-NV, LLC respectfully requests that this Court grant it the following relief:

(1)     Judgment awarding Plaintiff all damages caused by Defendant's breach of the Policies;

(2)     Judgment awarding Plaintiff all damages sustained as a result of Defendant's violations of Chapter 542 of the Texas Insurance Code;

(3)     Judgment awarding Plaintiff all damages sustained as a result of Defendant's violations of Chapter 541 of the Texas Insurance Code;

(4)     Judgment awarding Plaintiff all damages sustained as a result of Defendant's breach of its duty of good faith and fair dealing, including punitive and exemplary damages;

(5)     Judgment awarding Plaintiff all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code and Chapters 541 and 542 of the Texas Insurance Code;

(6)     Judgment awarding Plaintiff pre-judgment and post-judgment interest in the amount allowed by law;

(7)     Judgment awarding Plaintiff all costs of court; and

(8)     Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,


*/s/ Micah Skidmore*
Micah Skidmore
Texas Bar No. 24046856
*micah.skidmore@haynesboone.com*
Emily Buchanan
Texas Bar No. 24101568
*Emily.buchanan@haynesboone.com*
HAYNES AND BOONE, L.L.P.
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Telecopier:     (214) 651-5940

ATTORNEYS FOR PLAINTIFF HALL CA-NV, LLC