UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HALL CA-NV, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| OLD REPUBLIC NATIONAL | § | Civil Action No. 3:18-CV-00380-X |
| TITLE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This is a title insurance dispute involving mechanic's liens. Hall CA-NV, LLC (Hall) loaned money for the renovation of a hotel and casino that Frank Sinatra once co-owned. The contractor began work before the mortgage closed and Hall's title policies with Old Republic National Title Insurance Company (Old Republic) took effect. Change orders later caused an imbalance in the project, Hall stopped making loan advances, and the contractor stopped work. The contractor recorded liens for roughly $7.9 million, and Hall eventually settled with an agreement to sell the property and allow the contractor to recoup payment for the liens. Hall made a claim under its title policies for the loss attributable to the liens and filed suit for breach of contract, breach of the duty to defend, breach of the duty of good faith and fair dealing, and violations of Chapter 541 of the Texas Insurance Code. Both sides moved for summary judgment.

1

The Court holds there is no coverage for Hall's claim for coverage under the title policies because Exclusions 3(a) and 3(d) bar claims for liens and work performed after the policy date (and Hall has not raised a genuine dispute of material fact that the contractor's liens were for unpaid work before the policy date). Also, Hall's claim of a breach of the duty to defend and extra contractual claims fail to raise a genuine dispute of material fact as to an independent injury (apart from the denial of coverage) that Hall suffered as a result of the alleged breach and violations. As a result, the Court **DENIES** Hall's partial motion for summary judgment [Doc. No. 37], **GRANTS** Old Republic's motion for summary judgment [Doc. No. 40], and dismisses this action. Accordingly, the Court also dismisses as moot Hall's objection to Old Republic's summary judgment evidence (addressing evidence on which this ruling did not rely) [Doc. No. 57], Old Republic's motion to exclude expert testimony [Doc. No. 67], and Hall's motion to exclude expert testimony [Doc. No. 69].

## I. Factual Background

This dispute relates to the Cal Neva Lodge & Casino, a property Frank Sinatra co-owned in the 1960s that sits on Lake Tahoe. That property straddles the California/Nevada Line. New Cal-Neva Lodge, LLC (New Cal-Neva) owned the property, and, on September 30, 2014, Hall authorized up to $29 million in debt financing to New Cal-Neva. Hall did this after obtaining assurances from New Cal-Neva and its general contractor, The Penta Building Group, LLC (Penta), that a Hall loan would take priority over a mechanic's lien. This assurance took the form of Hall requiring Penta to enter into a subordination agreement and a "Contractor's Agreement and Consent to Assignment of Construction Documents"—where Penta

agreed to subordinate any lien it may ever have in favor of Hall.  Hall secured the loan with construction deeds of trust filed in the respective counties in California and Nevada.  And Old Republic issued title insurance policies to Hall in connection with the loan for California and Nevada dated October 2, 2014.[1]

Things went south by the summer of 2015.  Cal-Neva and Penta had agreed on several million dollars in change orders, the new total cost exceeded the loan commitment from Hall, and the project became out of balance.  In July 2015, Hall demanded Cal-Neva contribute an additional $1.4 million in equity or it would cease funding the project.  (Doc. No. 55 at 11–12).  When Hall eventually contributed the additional $1.4 million at the end of September, the project had become $3.5 million further out of balance.  (Doc. No. 55 at 12).  Additional change orders grew the imbalance to $9 million before Hall declared Cal-Neva in default.  (Doc. No. 55 at 12).  Hall's last loan advance was for worked performed through September 30, 2015.  (Doc. No. 55 at 12).  Hall communicated to Cal-Neva but not Penta or Old Republic that it would make no further loan advances.  (Doc. No. 55 at 12).  Around January 2016, Hall learned that Penta and its subcontractors stopped working due to non-payment.  (Doc. No. 55 at 13).

In February 2016, Penta recorded a mechanic's lien in Nevada claiming a balance of over $7.9 million, and Penta subsequently sought to foreclose on the lien.  Penta also filed mechanics lien in California that year.  Those cases were eventually transferred to New Cal-Neva's bankruptcy proceeding: *In re New Cal Neva Lodge,*

---

[1] The Nevada policy is Title Insurance Policy No. LX09695707 and the California policy is Title Insurance Policy No. A04285-LX-131878.

3

*LLC*, Case Adv. Nos. 16-5036 GWZ, 17-5003 GWZ, and 17-5007 GWZ. Hall filed a claim with Old Republic, and Old Republic assumed the defense.

In 2017, the bankruptcy court held that Hall's subordination agreement with Penta was unenforceable in Nevada, stating that "Hall is precluded from seeking to enforce any subordination provision with respect to that portion of the Property that is located in the State of Nevada." In December 2017, Hall agreed in principle with Penta and other parties to settle the bankruptcy matter by selling the property and dividing the proceeds. The property sold in January 2018 for $38 million; Penta received just over $7.9 million for its liens; and Hall received $26,753,429. Old Republic did not object to the settlement or dispute that Penta's liens took priority, but Old Republic refused to indemnify Hall. Hall claims a loss of at least $4,940,044.

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3] Courts "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[4] Thus, "the nonmoving party

---

[2] FED. R. CIV. P. 56(a).

[3] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

4

cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[5]

But here, both sides moved for summary judgment, and they did so on the legal interpretation of the policy. Under Texas law,[6] the insured has the burden of establishing that coverage is potentially provided by the insurance policy, but the insurer has the burden to prove the applicability of an exclusion (which allows it to deny coverage).[7] If the insurer proves an applicable exclusion, the burden shifts back to the insured to prove an applicable exception to the exclusion.[8] And an insurer bears the burden of proving an affirmative defense to a insured's claim.[9] Courts resolve ambiguities in favor of the insured.[10]

### III. Application

Title insurance is unique, and so is this dispute. Traditional insurance covers future risk, either for a period when events could occur (occurrence-based policies) or for a period when claims could be made (claims-based policies). Instead of insuring against future risk, title insurance covers past risk.[11] Here, Penta started its work

---

[5] *Hathaway v. Bazany*, 507 F.3d 312, 219 (5th Cir. 2007) (citations omitted).

[6] Old Republic contends in summary judgment briefing that California and Nevada law apply. But when Old Republic made this contention at the motion to dismiss phase, the Court held "although there might be substantive differences between Texas law and that of California and Nevada, Old Republic has failed to identify and analyze them. Therefore, the Court presumes Texas substantive law applies to Hall's claims[.]" Old Republic likewise has failed at the summary judgment stage to meet its burden to prove a conflict. As a result, the Court will continue to apply Texas law to this dispute.

[7] *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

[8] *Id.*

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[10] *Id.*

[11] *See, e.g.*, *Vestin Mortg., Inc. v. First Am. Title Ins. Co.*, 139 P.3d 1055, 1057 (Utah Ct. App. 2006) ("Thus, in order for a defect, lien, or encumbrance to fall within the insurance policy's coverage, it must have been in existence as of the effective date of the policy."); *Firstland Vill. Assocs. v. Lawyers Title*

5

before the date of the title policies, but the record contains no evidence that this work was unpaid. Instead, the record demonstrates that the unpaid work (and recording of liens) occurred after the policy dates. Both sides moved for summary judgment. The Court must therefore determine the core issue of whether these title policies cover Penta's liens.

## A. Coverage of the Liens

Coverage is the first inquiry. Hall argues there is coverage under the Endorsements, as well as Covered Risk 2 and 10.[12] Old Republic disputes coverage under each provision. Covered Risks Numbers 2 and 10 respectively require Old Republic to insure:

> as of Date of Policy . . . against loss or damage . . . sustained or incurred by the Insured by reason of . . .
>
> (2) [a]ny defect in or lien or encumbrance on the Title . . . ; [and]
>
> (10) the lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

(Doc. No. 58 at 8). Old Republic has not disputed in this proceeding that the Penta liens take priority over Hall's mortgage. (Doc. No. 40 at 12 n.5). Penta's priority liens caused it to take $7.9 million from the sale of the property and Hall to sustain a $4.9

---

*Ins. Co.*, 284 S.E.2d 582, 583 (S.C. 1981) ("Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance of the policy, is designed to save him harmless from any loss through defects, liens, or encumbrances that may affect or burden his title when he takes it."); *Nat'l Mortg. Corp. v. Am. Title Ins. Co.*, 261 S.E.2d 844, 847–48 (N.C. 1980) (explaining that title insurance is uniquely retrospective).

[12] Awkwardly, Hall's partial summary judgment motion did not move for summary judgment on the ground that there was coverage—only that the exclusions and fraud defense of Old Republic did not apply. It is awkward because it is Hall's burden to show coverage. But given that Old Republic moved for summary judgment on this issue and Hall responded, the Court will proceed with the coverage analysis using Hall's response.

million loss as a result.

The key dispute is whether Penta's work and liens were as of the date of the policies. California and Nevada[13] both have a "first spade rule," which allows a mechanic's lien to relate back to the earliest date the work of improvement began for purposes of determining lien priority.[14] Old Republic is correct in that this principle determines lien priority, not coverage. But this certainly factors into coverage. If work done prior to a recorded mortgage could later have a perfected lien that takes priority over the mortgage, it would certainly constitute a "defect in . . . Title" under Covered Risk 2 and a "lack of priority" of Hall's mortgage over such a lien under Covered Risk 10.

The Eighth Circuit opinion in *Captiva Lake Invests., LLC v. Fidelity National Title Insurance Co.* sheds some light on the interplay of the first spade rule and title coverage.[15] There, the Eighth Circuit held the first spade rule did not trigger coverage because the lien was filed after the policy date.[16] But the Court observed a line of cases involving work not merely started before the policy date but also completed, leaving an inchoate lien where the only remaining act was the filing of the lien.[17] In

---

[13] Hall argues to obtain the full benefit of the first spade rule (and indeed even more than it allows) from California and Nevada without arguing that California and Nevada law apply. Perhaps this is due to Hall previously arguing Texas law applies in order to bring Texas Insurance Code claims. In any event, the Court analyses California and Nevada law under the first spade rule and concludes that it still could not create coverage for Penta's liens. As a result, the Court need not disturb its prior acceptance of Hall's argument that Texas law applies.

[14] *See, e.g.*, CAL. CIV. CODE § 8458; N.R.S. § 108.225; *BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825, 827 (7th Cir. 2015) (noting that "[m]any states give unpaid contractors a mechanic's lien that is superior to all other security interests").

[15] 883 F.3d 1038, 1051 (8th Cir. 2018).

[16] *Id.*

[17] *Id.* ("The policy thus does not limit coverage to perfected liens, and an inchoate lien could meet the definition of "an alleged or apparent matter affecting the title to the land." *See Duffy [v. Sharp]*, 73

short, the dividing line in *Captiva* was whether contractors and suppliers were owed money as of the policy date.[18] If so, there was an unperfected lien and title insurance coverage. If not, the work was yet to be done and past-focused title policies do not cover it.

The Court concludes the unpaid Penta pre policy-date work was a defect in title under Covered Risk 2. Because of the first spade rule, such work could be perfected in a lien and take priority, which is why Hall attempted (albeit unsuccessfully) to subordinate that interest. Likewise, the Court concludes that the unpaid pre policy-date work constitutes an "encumbrance" on the Title that falls under Covered Risk 10. Post-mortgage liens where the work occurred after the mortgage was recorded and after the policy date would not qualify under Covered Risk 10 because the work and liens occurred after the policy and mortgage recording dates. Therefore, what factually matters for initial coverage is whether, as of the policy date, there was completed but unpaid for work by Penta that encumbered Hall's interest. But because the Court finds Exclusions 3(a) and (d) to apply, it need not apply the coverage issue to the facts at this point in the analysis.

### B. Exclusion 3(a)

Old Republic moved for summary judgment also on the basis that Exclusion 3(a) applies, arguing that the lien creation date occurred after the policy date, or alternatively that the lien was due to unpaid work done only after the policy date.

---

Mo. App. [316], 322 [Mo. Ct. App. 1898] ("[T]he right of a mechanic to file a lien at the time a conveyance is made, is an incumbrance within the meaning of a covenant against incumbrances.")).

[18] *Id.*

8

Hall moved for summary judgment on the basis that Exclusion 3(a) does not apply, arguing that under the first spade rule, the lien relates back to the start date of the project. The Court agrees with Old Republic's alternative argument. The date of the work—not the date of the recording of the lien—is what matters for coverage. But because the record here shows the work resulting in the Penta liens were post-policy work, Exclusion 3(a) applies.

> Exclusion 3(a) provides as follows:
>
> The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of . . .
>
> (3) [d]efects, liens, encumbrances, adverse claims, or other matters: (a) created, suffered, assumed, or agreed to by the Insured Claimant[.]"

(Doc. No. 38 at 17–18). This is standard form language designed to exclude coverage for the "intentional, illegal, or inequitable" acts of the insured.[19] "Created" in Exclusion 3(a) "has generally been construed to require a conscious, deliberate and sometimes affirmative act intended to bring about the conflicting claim, in contrast to mere inadvertence or negligence."[20] "Suffered" is "synonymous with the word 'permit' and implies the power to prohibit or prevent the lien which has not been exercised although the insured has full knowledge of what is to be done with the intention that it be done."[21] "The term 'assume' . . . requires knowledge of the specific title defect assumed."[22] "'[A]greed to' – carries connotations of 'contracted,' requiring

---

[19] *Home Federal Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 729-732 (7th Cir. 2012) (quoting PALOMAR, TITLE INSURANCE LAW § 6:10).

[20] *Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 784 (6th Cir. 1986).

[21] *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 867 (5th Cir. 2014).

[22] *Id.*

9

full knowledge by the insured of the extent and amount of the claim against the insured's title."[23]

The parties cite varied authorities, but they can be reconciled. The Sixth Circuit in *American Savings & Loan Association v. Lawyers Title Insurance Corp.* held that an insured "cannot be considered to have expressly created, suffered, assumed or agreed to mechanics' liens, when it sought assurances against those liens, simply because those assurances turned out to be insufficient."[24] The Seventh Circuit in *BB Syndication* addressed an issue where the insured stopped making payments on a construction loan and a mechanic's lien was filed.[25] In holding that Exclusion 3(a) applied, the Court held:

> BB Syndication chose to continue funding the project. That was its prerogative, of course, but in the end this risky business decision resulted in $17 million in liens from unpaid work.
>
> BB Syndication now looks to First American to cushion its losses, but this stretches title insurance too far. Finding coverage in this situation—where the insured lender has the sole discretion to either continue or cease funding a project that is or has become unfinishable—would raise a serious question of moral hazard.[26]

The Court further explained that under Exclusion 3(a), "[w]hen liens arise from insufficient funds, the insured lender has 'created' them by failing to discover and prevent cost overruns—either at the beginning of the project or later."[27] And the Eighth Circuit chimed in on this issue in *Captiva*, where the Court held that:

---

[23] *Am. Sav. & Loan Ass'n*, 793 F.2d at 784.

[24] *Id* at 785.

[25] *BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825 (7th Cir. 2015).

[26] *Id.* at 835.

[27] *Id.* at 836.

"[r]equiring the insurer to indemnify the lender would give the insured an unwarranted windfall and would place the title insurer in the untenable position of guaranteeing payment of work for which loan funds were never advanced."[28]

These authorities can be reconciled. *BB Syndication* and *Captiva* hold that post policy-date work that triggers a lien is excluded under 3(a). *American Savings & Loan Association* held that pre policy-date work and a resulting lien was not excluded under 3(a). So if the issue is coverage for unpaid pre-policy date work that Hall unsuccessfully tried to subordinate, those negligent attempts were not intentional, after-the-fact acts that trigger Exclusion 3(a). Instead, if the issue is Hall stopping loan advances after the policy date and Penta filing a lien for such work, then Exclusion 3(a) applies to bar coverage.[29]

Given that legal framework, what work here did Penta perform before the policy date that created the lien? The testimony appears one-sided that the unpaid work resulting in the Penta liens occurred after the policy date. For example, Hall witness Michael Jaynes testified:

> Q. All the work that was done before your loan closed on or around September 30, 2014, you understand, first, that the majority of it was paid for at or before closing, correct?
>
> A. Correct.
>
> Q. And then you think there may be some small amount that Hall actually funded out of its construction loan in the first couple of

---

[28] 883 F.3d at 1047 (quotation marks omitted).

[29] Old Republic cites to *Collins Devel., Inc. v. Fed. Deposit Ins. Corp.*, 441 F. App'x. 451, 452 (9th Cir. 2011), for the proposition that a contractor who fails to comply with state law requirements for perfecting a lien cannot have a priority interest. This is true, but Old Republic never explains how Penta did not perfect its lien here. It appears that it did, resulting in the bankruptcy court's ruling that Penta's lien had priority over Hall's mortgage. So what matters in this case is not the perfecting or failure to perfect a lien, it is whether the unpaid work was before or after the policy date.

>draws that paid for work that was done before closing?

A. Correct.

Q. And so is it fair to say that by the time we got to that point, when you funded your first couple of draws, Hall's position is that all of the work, putting the abatement on the side for a moment, all of the work that was done before closing has been paid for at least by that time?

A. I believe so.

Similarly, Hall witness Rebecca Reitz testified:

> Q. In this case, we know—and you recall that there was work done by—on the project before your loan closed, correct?
>
> A. Correct.
>
> Q. You understand that was done by PENTA and others?
>
> A. Correct.
>
> Q. Okay. And so as part of closing the loan, did Hall make sure that, in fact, that work had been completed and paid for?
>
> A. I believe so.

Likewise, Hall witness Robert Radovan testified:

> Q. And the work was completed before the suspension of activity in January of 2014; correct?
>
> A. Yes.
>
> Q. And it was paid for?
>
> A. Yes.
>
> Q. Any work that was commenced before the Hall loan closed, Cal-Neva paid for it; right?
>
> A. Yes.
>
> Q. It was all paid for?
>
> A. Yes.
>
> Q. No doubt about that?

A. To the—as best I know, yes.

Q. Okay.

A. I don't—I don't know of anything that was outstanding.

Q. So there was nobody owed any money that were asserting liens against the property?

A. No, that I'm aware of.

Hall's response is legal, not factual, in arguing that the first spade rule makes the unpaid post-policy work relate back to when the project first began. But this argument conflates the statutory framework for lien prioritization with title insurance coverage. And the Court has explained the weight of authority is against such an approach.

Accordingly, Old Republic has carried its burden of proving Exclusion 3(a) applies, and Hall has not raised a genuine dispute of material fact that the Penta liens were for unpaid pre policy-date work.

### C. Exclusion 3(d)

Both sides also moved for summary judgment on their respective interpretations of Exclusion 3(d). Exclusion 3(d) provides:

> The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of . . .
>
> (3) [d]efects, liens, encumbrances, adverse claims, or other matters: . . .
>
> > (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14)[.]

The policy date was October 2, 2014.

"Attach" means to "fasten on or affix to; connect or join"[30] or to "adhere."[31] "Create" means "cause to exist; bring into being; originate" or "give rise to; bring about; produce."[32]

The Court holds that this analysis is similar to that for Covered Risks 2 and 10 and Exclusion 3(a). The "defect" (such as the unpaid work) must been created prior to the policy date to qualify under the legal framework for liens and title policies. If what remained was a filing of the lien for unpaid work on October 2, 2014, such work is not excluded under Exclusion 3(d). Instead, if the unpaid work was created after October 2, 2014, such defect or lien falls under Exclusion 3(d).

As explained above, the Court has concluded that the evidence demonstrates the unpaid work resulting in the Penta lien occurred after the policy date. As a result, Old Republic is also entitled to summary judgment as to Exclusion 3(d).[33]

### D. Old Republic's Fraud Defense

As a result of the holding that Exclusions 3(a) and 3(d) exclude coverage, the Court need not reach Old Republic's affirmative defense of fraud (which Hall moved for summary judgment on) as a further basis to negate liability.

### E. Hall's Claim for Independent Counsel/Duty to Defend

Hall's complaint, charitably construed, could be viewed as asserting a claim for

---

[30] THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 84 (1976).

[31] BLACK'S LAW DICTIONARY 127 (10th ed. 2014).

[32] THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 310 (1976).

[33] Hall moved for summary judgment on Old Republic's assertion that there is no coverage under Endorsement 32-06 and Exclusion 4. Hall and Old Republic agree in summary judgment briefing that Endorsement 32-06 and Exclusion 4 do not apply The Court agrees. Those provisions address prospective title risk from a lack of priority of Hall's mortgage as security for each construction loan advance. This is simply not the dispute at issue in Hall's claim.

breach of a duty to provide independent counsel (also known as a duty to defend or an independent counsel claim). Old Republic moved for summary judgment on that claim, arguing there was no actual conflict or evidence of damages. Hall opposed.

When an insurer owes a duty to defend a claim, that duty includes the duty of the insurer to provide independent counsel to the insured should a conflict emerge between the insurer and insured.[34] An actual conflict can emerge when an insurer reserves its rights on an issue that will be ruled on in a coverage dispute.[35]

Here, Old Republic put Hall on notice that Hall had no evidence of an actual conflict or evidence of injury/damages. (Doc. No. 41 at 22). Hall responded arguing four discrete set of facts that, in its view, demonstrated an actual conflict. (Doc. No. 59 at 23–24). But Hall failed to adduce evidence of what its injury attributable to the failure to have independent counsel would be. Assuming without deciding there was an actual conflict, Hall has not met its burden of raising a genuine dispute of material fact as to the injury and damages caused by such an conflict.

### F. Hall's Extra Contractual Claims

Hall also has live extra-contractual claims for (1) breach of the duty of good

---

[34] CAL. CIV. CODE § 2860(a) ("If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless . . . the insured expressly waives, in writing, the right to independent counsel."); *State Farm Mut. Auto. Ins. Co. v. Hansen*, 357 P.3d 338, 339 (Nev. 2015) ("Nevada law requires an insurer to provide independent counsel for its insured when a conflict of interest arises between the insurer and the insured.").

[35] *See, e.g.*, CAL. CIV. CODE § 2860(b) ("[W]hen an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist."); *Hansen*, 357 P.3d at 339 ("[A]n insurer is only obligated to provide independent counsel when the insured's and the insurer's legal interests actually conflict[.]").

faith and fair dealing, and (2) violations of Texas Insurance Code Chapter 541.[36] Old Republic moved for summary judgment on both claims, and Hall opposed.

Hall's bad faith claim suffers from the predicate defect that Hall has not proven a breach of contract. Under any applicable law, breach of an insurance contract is a prerequisite to a bad faith claim.[37] Hall does not dispute this principle, only that there was a breach that entitles it to extracontractual remedies.[38] ("While Old Republic urges that a breach of contract is a prerequisite to recovery for bad faith, for all of the reasons addressed above, Old Republic has breached its contracts with Hall by refusing to indemnify Hall for its loss in connection with Penta's Liens."). As a result, Old Republic is entitled to summary judgment on Hall's bad faith claim.

Hall's claim under Chapter 541 of the Texas Insurance Code includes claims for (1) refusing coverage or indemnity without a reasonable investigation (under section 541.060(7), and (2) misrepresentations (under sections 541.060(2) and (3)).[39]

---

[36] Hall originally included a claim for violation of Texas Insurance Code Chapter 542. The Court previously dismissed the Chapter 542 claim, holding that this law does not apply to title insurance. "According to its plain language, § 542 'does not apply to . . . title insurance,' so plaintiffs with a title insurance policy cannot bring claims thereunder."

[37] *See, e.g.*, *Hovannisian v. First Am. Title Ins. Co.*, 14 Cal. App. 5th 420, 437 (Ct. App. 2017) ("Since we have determined as a matter of law that the policy provides no coverage for the claims asserted in the underlying action, there cannot be a bad faith claim as a matter of law."); *U.S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975) (extracontractual damages only permitted when insurer refuses "without proper cause to compensate its insured for a loss covered by the policy"); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) ("An insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits.").

[38] The Court's holding today disproves that Old Republic breached the insurance policy by not indemnifying Hall. And Hall's failure to adduce evidence of an injury or damages on its duty to defend claim leaves Hall unable to move forward on any breach theory.

[39] To the extent Hall's Chapter 541 claim includes a claim for failure of Old Republic to settle Penta's claim, the Court's holding today resolves that such a claim was excluded from coverage under Exclusions 3(a) and 3(d). To the extent Hall's Chapter 541 claim includes a claim for independent counsel, Hall has no evidence of injury or damages.

Neither theory survives summary judgment. Hall has failed to raise a genuine dispute of material fact that Old Republic's conduct in denying its claim was the proximate or producing cause of "any damage separate and apart from those that would have resulted from a wrongful denial of the claim" to allow recovery of extracontractual damages in the absence of coverage.[40] As the Texas Supreme Court has explained, "[w]hen an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits."[41] The is precisely what Hall seeks, made clear by Hall's briefing that, "[b]ecause the conduct outlined above caused and resulted in Hall's denial of covered benefits under the Policies, Hall is entitled to recovery of those same damages in connection with its extracontractual claims." Because the policy does not entitle Hall to benefits and Hall has no evidence of an independent injury, Hall cannot prove damages on its Insurance Code claim.

## IV. Conclusion

For the foregoing reasons, there is no coverage for Hall's insurance claim because Exclusions 3(a) and 3(d) apply, and Hall has not raised a genuine dispute of material fact that Penta's liens were for unpaid work before the policy date. And Hall's claim of a breach of the duty to defend and extra contractual claims fail to raise a genuine dispute of material fact as to an independent injury (apart from the denial of coverage) that Hall suffered as a result of the alleged breach and violations. As a result, the Court **DENIES** Hall's partial motion for summary judgment, **GRANTS** Old

---

[40] *Menchaca*, 545 S.W.3d at 499.

[41] *Id.* at 500.

Republic's motion for summary judgment, and dismisses this action. Accordingly, the Court dismisses as moot Hall's objection to Old Republic's summary judgment evidence (evidence on which this ruling did not rely), Old Republic's motion to exclude expert testimony, and Hall's motion to exclude expert testimony.[42]

**IT IS SO ORDERED** this 20th day of February.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[42] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.